**GREENBERG TRAURIG, LLP**
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 443-3543 (Telephone)
(973) 295-1333(Facsimile)

*Counsel to Jefferies LLC and Jefferies*
*Group LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| RICK ALAN DAVIDSON, | Case No. 19–11486 (SMB) |
| Debtor. | |

## OBJECTION OF JEFFERIES LLC AND
## JEFFERIES GROUP LLC TO DEBTOR'S CLAIMED EXEMPTIONS

Jefferies LLC and Jefferies Group LLC (collectively, "Jefferies"), by and through their undersigned counsel, hereby objects to the exemptions claimed by Rick Alan Davidson ("Davidson" or the "Debtor") and respectfully represents as follows:

### JURISDICTION AND VENUE

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157. The issues raised in this motion constitute a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and (B). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 522.

### RELEVANT FACTUAL BACKGROUND

**A.    Davidson's Debt Due to Jefferies**

Jefferies is a diversified financial services company engaged in investment banking and capital markets, asset management and wealth management. Jefferies offers a full range of

investment banking, equities, fixed income, asset and wealth management products and services. Jefferies LLC is a brokerage firm registered with and regulated by the Securities and Exchange Commission ("SEC") and FINRA. Jefferies Group LLC is the sole member of Jefferies LLC and the holder of a Full-Recourse Promissory Note (the "Note") in the principal amount of $5,142,500.00 executed by Davidson.

Davidson is a securities broker and investment adviser registered with and regulated by the SEC and FINRA, with over 30 years of experience in the broker-dealer industry. Jefferies terminated Davidson's employment for cause as of June 16, 2017, which triggered a repayment obligation under the Note. As of May 7, 2019 (the "Petition Date"), there was an outstanding principal balance of approximately $5,142,500.00, plus accrued interest of $857,900.54, attorneys' fees and costs of $626,083.30 and estimated arbitration forum fees of $20,587.50, for a total of $6,647,071.34 due from the Debtor to Jefferies under the Note.

On October 26, 2017, Jefferies initiated an arbitration against Davidson by filing a Statement of Claim with the Dispute Resolution arbitral forum of the Financial Industry Regulatory Authority (the "FINRA Arbitration"). Jefferies asserted claims against Davidson for breach of the Note and unjust enrichment/*quantum merit*. The FINRA Arbitration was nearing conclusion, with the three-member panel of arbitrators only days away from concluding the final hearing when the Debtor filed bankruptcy.

**B.    Davidson Files Bankruptcy In an Effort to Thwart**
**FINRA Arbitration From Concluding**

The Debtor commenced this case on the Petition Date by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). According to Davidson's Amended Schedules of Assets and Liabilities [Dkt No. 60] (the "Schedules"), in the two years prior to his bankruptcy filing, Davidson's income was approximately $2.2 million and $2.3 million, respectively, and he currently receives wages, monthly gross salary and commissions

of approximately $140,000.00 per month.    Yet, notwithstanding his vast income, Davidson has

failed to schedule substantial assets and/or the proper value of his assets.

On September 19, 2019, the Court entered an order modifying the automatic stay to allow

Jefferies and Davidson to proceed with the FINRA Arbitration through final award for the

purposes of adjudicating and fixing Jefferies' claims against the estate and Davidson's

counterclaims against Jefferies [Dkt. No. 58].

**C.    Davidson's Substantial Equity in His Sag Harbor, New York Property**

Davidson admits in his Schedules, filed under penalty of perjury, that he and his girlfriend,

Nancy Stearns ("Stearns"), relocated to Miami Beach, Florida shortly before the Petition Date.

Davidson claims to reside in a rented condominium unit in the Continuum in Miami Beach, a

luxury oceanfront condominium, for which Davidson pays $8,000.00 per month in rent (the

"Miami Residence").    In addition to his Miami Residence, Davidson owns a newly renovated large

home on almost one acre in Sag Harbor, New York (the "Sag Harbor Property"), which he claims

to own as a joint tenancy with Ms. Stearns.

The Sag Harbor Property has recently been appraised at $3,032,835.00 (the "Appraised

Value").[1]    *See* Proof of Claim of Suffolk County Federal Credit Union ("SCFCU") [POC No. 9-

1], a copy of which is annexed hereto as Exhibit A.    In addition, the Zillow webpage for the Sag

Harbor Property included in SCFCU's Proof of Claim includes several exterior and interior

photographs of the home, which illustrate a newly renovated large home, with several pieces of

high-end modern furniture, art work, large flat screen television, high-end kitchen appliances and

an in-ground pool accompanied by lounging and seating for many guests.    *Id.*

Both People's United Bank ("PUB") and SCFCU hold mortgages on the Sag Harbor

---

[1] The value of the Sag Harbor Property is not substantively in dispute, as the Debtor lists the current value of the property in his Schedules as $2,900,000.00.    Schedules A/P Property.

3

Property in the aggregate amount of $2,256,777.52 as follows (the "Mortgages"):

| | |
|---|---|
| PUB | $1,977,577.72 |
| SCFCU | $  279,199.80 |
| | $2,256,777.52 |

*Id.*; Proof of Claim of PUB [POC No. 6-1]. Taking into account the Appraised Value and the Mortgages, there is at least $776,057.48 of equity in the Sag Harbor Property; at least half of which – $388,028.74 – is property of Davidson's bankruptcy estate. Notwithstanding the estate's substantial equity, Davidson's Schedules contend that he has no equity in the Sag Harbor Property. As further set forth herein, Davidson's Schedules are replete with inaccurate information.

**D.**    **Davidson and Stearns Refuse to Comply With B.R. 2004 Consent Order**

On July 15, 2019, the Court entered a *Consent Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing Jefferies LLC and Jefferies Group LLC to issue Subpoenas for the Production of Documents and to Examine the Debtor and Nancy Stearns* (the "B.R. 2004 Consent Order") [Dkt. No. 32], the terms of which were agreed to by the parties (including Davidson and Ms. Stearns), including the issuance of subpoenas and requests to produce certain documents related to, *inter alia*, the whereabouts of Davidson's assets and substantial transfers he made (and continues to make) to Ms. Stearns.

To date, notwithstanding numerous demands on both Davidson and Ms. Stearns, both have refused to comply with the subpoenas and B.R. 2004 Consent Order. Among other things, Jefferies has provided Davidson and Ms. Stearns with detailed lists of missing bank accounts (by account number) and companies that Davidson appears to have interests in, but are not listed in his Schedules. *See* Letter to Honorable Stuart M. Bernstein dated August 21, 2019 [Dkt. No. 49] annexed hereto as <u>Exhibit B</u>. Yet, in total disregard of their duties under the Bankruptcy Code, the subpoenas and the B.R. 2004 Consent Order, Davidson and Ms. Stearns continue to refuse to

turn over the required documents.

Among other things, Jefferies is entitled to discovery concerning the Debtor's Schedules, exemptions, chapter 11 plan and assets – particularly given his admittedly lavish lifestyle and significant transfers to Ms. Stearns. *See* Disclosure Statement, Ex. C [Dkt. No. 43]. For example, the Schedules filed by the Debtor in connection with his bankruptcy filing assert that he earned $2.2 million and $2.3 million in income for the years 2018 and 2017, respectively (*see* Debtor's Amended Statement of Financial Affairs ("SOFA") at Question 4 [Dkt. No. 61]). Yet, the Debtor claims that, after his and Ms. Stearns' alleged personal expenses of approximately $1.4 million a year, he only has $284,356 a year available for distribution to creditors. *See* Disclosure Statement, Ex. C [Dkt. No. 43].

In a clear and calculated effort to hide assets and thwart creditors, Davidson and Stearns continue to flagrantly disobey the B.R. 2004 Consent Order. Davidson refuses to comply with his fiduciary duties required by the Bankruptcy Code, and fails to properly schedule his true assets available to creditors of his bankruptcy estates.

## OBJECTION TO CLAIMED EXEMPTION

### A.    Davidson is Concealing His Substantial Equity Interest In the Sag Harbor Property

Davidson is concealing his substantial equity interest in the Sag Harbor Property. As Scheduled, Davidson asserts that he has no equity in the Sag Harbor Property despite the property's value being significantly greater than the value of the Mortgages on the Sag Harbor Property. Davidson reaches this conclusion by attributing only half the value of the Sag Harbor Property to his estate, but obligating his estate on the entirety of the debts secured by the Mortgages. The manner in which Davidson seeks to calculate his equity is not only wrong as a matter of New York law, but it is also a transparent attempt to defraud creditors and mislead this Court regarding the equity available in the Sag Harbor Property.

To determine a debtor's equity interest in real property owned jointly with a non-debtor, courts in New York use the full value of the real property, then deduct the full amount of all mortgages and other non-avoidable liens that attach to the entire property, determine the amount of the net equity available to the debtor based on his proportionate ownership interest in the property, and then apply the debtor's claimed homestead exemption to the amount of the debtor's net equity interest. *See In re Martin*, No. 13-70064-ast, 2013 WL 3956384 at *4 (Bankr. E.D.N.Y. July 25, 2013); *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1257 (11th Cir. 2000*)*; *Nelson v. Scala*, 192 F.3d 32, 33 (1st Cir. 1999); *Premier Capital, Inc. v. Pagnini (In re Pagnini)*, 433 B.R. 455, 459 (B.A.P. 1st Cir. 2010).

This approach is consistent with New York law regarding the rights of joint tenants to real property, such as Davidson and Ms. Stearns, and is consistent with the distribution of funds to a debtor's creditors. *See Nelson*, 192 F.3d at n.2; *Pagnini*, 433 B.R. at 458 ("Debtor may claim a homestead exemption only in her one-half interest in the Property."); *Martin*, 2013 WL 3956384 at *[●] (when only one joint tenant files bankruptcy, the proper calculation is to use the full value of the property and the full amounts of all non-avoidable liens).

Applying this accepted method of calculating a debtor's equity in real property in which the debtor owns the property as a joint tenant with a non-debtor to this case establishes that the Debtor has at least $388,028.74 in net equity in the Sag Harbor Property that should inure to the benefit of the Debtor's estate and his creditors. More specifically,

1.    The Sag Harbor Property has a fair market value of $3,032,835.00.

2.    The entire Sag Harbor Property is encumbered by two Mortgages totaling $2,256,777.52 (*see Jefferies'* reservation of rights set forth in footnote 2 herein).

3.    After deducting the amount secured by the Mortgages from the total values, there is at least $776,057.48 in net equity in the Sag Harbor Property.

4.    Davidson owns at least one-half interest in the Sag Harbor Property. As such, Davidson's net equity (which inures to his bankruptcy estate) is at least

$388,028.74.

Even so, and in an effort to hide this equity from his creditors, the Debtor asserts the entire

amount of both Mortgages against only 50% of the total value of the Sag Harbor Property in an

attempt to suggest that there is no equity in the Sag Harbor Property available for creditors. *See*

Schedule A/B: Property, Question 2; Schedule D: Creditors Who Have Claims Secured by

Property, Part 1.

Given the Debtor's claim that the Sag Harbor Property lacks any equity, Davidson's

Schedules do not expressly claim any homestead exemption under Section 522(d)(1)[2].

Accordingly, Davidson cannot exempt any of his interest in the Sag Harbor Property. *See In re*

*Coppola*, No. 12-70958, 2013 WL3794098, p. 3 (Bankr. E.D.N.Y. July 18, 2013) ("asserting a

$0.00 homestead exemption is tantamount to not claiming an exemption in the Property"). *In re*

*Forti*, 224 B.R. 323, 327-28 (Bankr. D. Md. 1998) (where debtors claimed a zero dollar exemption

in corporate stock and their principal residence, "Debtors' interests in their assets [were] exempt

only to the extent of zero dollars. In effect, no dollar amount of the exemption has been

preserved."). Yet, notwithstanding at least $388,028.74 in equity available for Davidson's

unsecured creditors, in an improper back-door effort to defraud his creditors, Davidson

fraudulently alleges he has no equity in the Sag Harbor Property and seeks to apply the $11,850

---

[2] Nor could Davidson claim any interest in the Sag Harbor Property under the New York State homestead exemption, as N.Y. C.P.L.R. § 5206 only permits a homestead exemption on real property "occupied as a principal residence." Davidson's bankruptcy petition states he lives in Miami, Florida. Moreover, Davidson and his counsel have advised this Court on several occasions that he and his girlfriend moved to Miami, Florida prior to filing the bankruptcy petition. *See* Affidavit of Rick Alan Davidson in Opposition to Jefferies' (A) Motion, pursuant to 28 U.S.C. § 1334(c)(1), for abstention in favor of pending Arbitration and (B) Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(D)(1) [Adv. Pro. Dkt. No. 7] at ¶ 19 ("relocate to Florida"); Sept. 5, 2019 H'rg Tr. 11:5-7 (MR. STEWART: "Mr. Davidson had already relocated . . . . to Florida."). Several bankruptcy courts in the Second Circuit have addressed the issue of a debtor's entitlement to a claim of a homestead exemption. The conclusion of those courts is very clear; a debtor cannot claim a homestead exemption unless they occupy the property at issue as a principal residence. *See, e.g., In re de Kleinman*, 172 B.R. 764, 772 (S.D.N.Y. 1994). Accordingly, as his principal residence is admittedly in Florida, Davidson cannot avail himself of the homestead exemption on the Sag Harbor Property.

wildcard homestead exemption of § 522(b)(1) against other assets under § 522(d)(5).[3]
Accordingly, in the abundance of caution due to Davidson's fraudulent attempt to create an
"exemption" of his equitable interest in the Sag Harbor Property by falsely claiming his estate has
no equity in the property, Jefferies objects to any attempted exemption of Davidson's equitable
interest in the Sag Harbor Property.

**B.    Davidson Should be Denied All Claimed Exemptions Due to
His Bad Faith Actions and Concealment of Assets**

Upon objection by a party-in-interest, in determining whether to allow the claimed
exemptions, courts – in addition to the substantive objection – also consider whether the debtor
has concealed assets or engaged in bad faith.  *See generally In re Cinelli*, No. 05-16962, 2006
LEXIS 3432 at *7 (Bankr. N.D.N.Y. Dec. 8, 2006); *de Kleinman*, 172 B.R. 770; *In re Talmo*, 185
B.R. 637 (Bankr. S.D. Fla. 1995).   When considering a debtor's behavior and whether an
exemption will be disallowed, the Second Circuit has noted that "exempting property is not a game
of hide and seek" and the initial burden falls upon the debtor to particularize his or her exemption
in order to "permit a trustee to ascertain, w*ithout any further substantial inquiry*, those properties
which a debtor believes to be exempt from distribution to creditors."  *de Kleinman*, 172 B.R. at
770 (emphasis provided); *see also In re Edmonds*, 27 B.R. 468, 469 (Bankr. M.D. Tenn 1983); *In
re Elliott*, 31 B.R. 33, 35 (Bankr. S.D. Ohio 1983).

In this case, Davidson and Ms. Sterns are engaging in the very game of "hide and seek"
eschewed by the Second Circuit.  Davidson purposefully omitted and undervalued materials assets
and several bank accounts in his Schedules and has engaged in a pattern of fraudulent transfers,
transferring substantial sums of money to Ms. Stearns (both before and after the Petition Date).[4]

---

[3] *See also* Davidson's fraudulent calculations of alleged unsecured portions of PUB's and SCFCU's claims with
respect to the Sag Harbor Property, Schedule D, Part 1.

[4] Davidson admits in his Disclosure Statement that he has no intention of pursuing recovery of the avoidance actions
from Ms. Stearns for the benefit of his creditors.  In addition to the substantial pre-petition transfers of cash directly

Moreover, as part of his shell game, Davidson is attempting to conceal his in equity in the Sag Harbor Property, which is patently worth several hundred thousand dollars. As part of the Debtor's concerted effort to continue to hide assets, he (and Ms. Stearns) refuses to comply with Jefferies' numerous requests to produce documents regarding the Sag Harbor Property and his other undervalued and unscheduled assets. Davidson's utter disregard for the B.R. 2004 Consent Order issued by this Court and the requirements of the Bankruptcy Code must not be condoned.

Bankruptcy courts have disallowed claimed exemptions in circumstances similar to those extant here where the debtor has attempted to conceal assets in bad faith. In *In re Talmo*, 185 B.R. 637, for example, the debtor scheduled an ownership interest in approximately 300 acres of farm land in which he claimed only 30 acres as exempt. *Id.* at 639-40. After the sale of 140 acres by the Chapter 7 trustee, the debtor amended his petition to increase his homestead exemption to 118 acres. *Id.* at 644. The debtor purposefully acted after the sale of the 140 acres because the majority of the sale proceeds went to satisfy a mortgage lien against both the 140 acres and the 118 acres. *Id.*

In denying the debtor's homestead exemption and the exemptions for the undisclosed claims, the Court found evidence of both bad faith and concealment of assets by the debtor. The court first addressed the debtor's bad faith and noted that ". . . the focus here is on the debtor's purpose in the delay in amending his claimed exemption was deliberately intended to gain an economic or tactical advantage, at the expense of creditors and the interests of the estate." *Id.* at 648. The Court found that the debtor acted in bad faith because he timed the amendment to include the additional homestead exemption to take place after the sale of the 140 acres. *Id.* The Court

---

to Ms. Stearns and payment of expenses on her behalf, Davidson disregards the tenants of Bankruptcy Code and his fiduciary duties thereunder by, *inter alia*, continuing to make improper transfers directly to and on behalf of Ms. Stearns post-petition. *See* Monthly Operating Report for the periods May 7, 2019 through August 31, 2019 [Dkt. Nos. 24, 39 and 57] ("MORS"); Disclosure Statement Pursuant to § 1125 of the Bankruptcy Code Describing the Chapter 11 Plan of Reorganization Proposed by the Debtor [Dkt. No. 43] at § II.A.3.

also found evidence of bad faith in the debtor's failure to disclose his claims against third parties when he had knowledge of same for at least several months. *Id.*

In this case, Davidson purposely concealed over $380,000 in equity in the Sag Harbor Property, substantial assets from his Schedules, and purposely undervalued material assets that he continues to enjoy as part of his lavish lifestyle. All while refusing to turn over highly relevant subpoenaed documents. Given Davidson's blatant bad faith, his claims of exemption should be disallowed in their entirety.

Like *Talmo*, Davidson's strategy in his Chapter 11 case is "to disclose as little as possible, offer creditors as little as possible, and keep as much as possible for himself." *Id.* Davidson gambled by filing this case and failing to disclose material assets, is about to lose "and now wants to take back his bets...That sure doesn't happen in poker; it will not happen in this bankruptcy case." *Id.* The Debtor's claimed exemptions should, therefore, be denied.

**C.    Objections to Exemptions Sought Pursuant to Section 522(d)(3)**

Section 522(d)(3) permits the Debtor to exempt

> the debtor's interest, not to exceed $600 in value in any particular item or $12,625 in aggregate value, in household goods, wearing apparel, appliances, . . . . that are held primarily for the personal family, or household use of the debtor or a dependent of the debtor.

11 U.S.C. §522(d)(3).

**1.    Upon information and belief, Davidson's furniture, appliances and household items exceed the statutory cap on exemptions.**

Without annexing any proof of value, Davidson claims in his Schedules that the current value of his furniture, appliances, and household items (collectively, the "Household Property") is only $5,000.00. The interior and exterior pictures of the Sag Harbor Property annexed to the SCFCU Proof of Claim[5], however, suggest that the Debtor has grossly undervalued the Household

---

[5] *See* SCFCU Proof of Claim.

Property.    The photographs show a recently, well-furnished ten room home, with high-end furniture, finishing and appliances.    In addition, Davidson likely owns at least some furniture, appliances, and household items at his $8,000.00 per month Miami Residence.    As discussed above, Davidson has failed to comply with Jefferies' document requests, including those requests that would provide a true accounting of Davidson's assets, including the Household Property. Accordingly, Jefferies objects to the claimed exemption to the extent the actual value of any particular item exceeds the $600.00 statutory cap – which several items almost certainly do –and to the extent the aggregate value of his furniture, appliances and household items exceed the $12,625 aggregate statutory cap – which is very likely, as well.

    **2.**    **Upon information and belief, the value of Davidson's TVs and computers exceed the statutory cap on exemptions.**

Davidson claims in his Schedule that the value of his TVs and computers are only $500.00. It is reasonable to believe that a financial advisor that claims to run an extensive financial business with $140,000.00 per month income would need current, sophisticated computer hardware, software and related accessories worth in far excess of $500.00 to research real-time investment opportunities, run proprietary financial models and place real-time trades.    Furthermore, as Davidson's Monthly Operating Reports show substantial travel, it would seem he would also need sophisticated mobile technology capabilities to operate his business while on the road. Accordingly, Jefferies objects to the claimed exemptions to the extent the actual value of Davidson's computers and TVs exceed $500.00.

    **3.**    **Upon information and belief, the value of Davidson's clothes and shoes exceed the statutory cap on exemptions.**

Davidson claims in his schedules that the value of his clothes and shoes is only $4,000. Yet, he also admits to spending $1,500.00 a month for "clothing, laundry and dry cleaning".    *See* Schedule J, Line 7.    It is reasonable to assume that an individual that spends $18,000.00 a year for

"clothing, laundry and dry cleaning" has more than $4,000.00 in clothes and shoes.

Accordingly, Jefferies objects to the claimed exemptions to the extent the actual value of Davidson's clothes and shoes exceed the statutory caps set forth in §522(d)(3) of the Bankruptcy Code.

**E.    Objection to Exemptions Sought Pursuant to Section 522(d)(5)**

Pursuant to Section 522(d)(5) of the Bankruptcy Code, a debtor is limited to claim as exempt, "his aggregate interest in any property, not to exceed in value $1,250.00 plus up to $11,850.00 of any unused amount of the exemption provided under paragraph (1) of this sub section." 11 U.S.C. § 522(d)(5)

Davidson claims exemptions for the following assets in the aggregate amount of $22,500.00 under Section 522(d)(5):

| Asset | Claimed Value | Claimed Exemption |
| --- | --- | --- |
| Various Art Work | $5,000.00 | $5,000.00 |
| Golf Clubs | $400.00 | $400.00 |
| Bicycle | $100.00 | $100.00 |
| Cartier Watch | $4,000.00 | $4,000.00 |
| Cash | $1.00 | $1.00 |
| Total | | $10,500.00 |

Conveniently, each of the items listed is claimed as fully exempt.

**1.    Davidson is not entitled to use the additional $11,850.00 from his homestead exemption.**

As discussed above, Davidson is attempting to hide in excess of $388,000.00 in equity in the Sag Harbor Property. To the extent Davidson seeks to use any portion of his homestead (whether expressly or indirectly), Davidson has no unused amount of his homestead exemption and is not entitled to "double dip" and apply the $11,850.00 to exemptions of other assets. Accordingly, Jefferies objects to Davidson's application of the $11,850.00 homestead exemption.

**2.    Davidson claims exemptions in excess of the statutory cap.**

In furtherance of his fraud on this Court, Davidson conveniently amended his Schedules to reduce the value of his Cartier watch claimed in his original schedules [Doc. No. 1] from $8,000 down to $4,000 and his cash from $9,000 down to only $1 to manipulate the amount of his 522(d)(5) exemption to below the statutory cap of $1,250.00. Accordingly, Jefferies objects to the extent Davidson seeks to claim exemptions in excess of the statutory cap.

**3.    Upon information and belief, the value of Davidson's assets in which he claims exemption under § 522(d)(5) exceed the statutory cap.**

As discussed above, Davidson is refusing to produce documents and information relating to the value of his assets. Notwithstanding Davidson's lack of compliance with Jefferies' document requests, the limited documents produced to date reveals substantial additional assets not listed on his Schedules, including several bank accounts and interests in various other entities. These material omissions are not justifiable and should not be excused.

Specifically, among other documents and information, Davidson has refused to produce bank statements for account numbers ending in 0279, 3553, 0706 and 2454, which he failed to schedule, as well as Bank of America account numbers ending in 8474, 0272, 1892, 8053, all which Davidson claims he closed within a month prior to his bankruptcy filing.

Moreover, Davidson admits to yearly income of $2.2 million and $2.3 million in the two years prior to his bankruptcy filing, and alleges general expenses of $1,494,144 per year.[6] Yet Davidson claims he only had $1 in cash. This leaves serious questions concerning the whereabouts of Davidson's considerable income and in the various bank accounts listed above which Davidson refused to disclose. The figures offered by Davidson do not compute. Moreover, Davidson's amended Schedules lists $8,109.00 in checking accounts at PUB and JPMorgan Chase as of the

---

[6] Additionally, his Monthly Operating Reports (the "MORs") show cash receipts of $977,981.36 for the five month reporting period from the Petition Date through September 30, 2019. *See* MORs [Dkt Nos. 24, 39, 48, 57 and 63].

Petition Date. *See* Schedule A/B: Property Question 17 and SOFA Question 20. Accordingly, Jefferies objects to Davidson's claimed exemptions to the extent the actual value of assets he seeks to exempt exceeds the statutory cap of $1,250.00 set forth in Section 522(d)(3) of the Bankruptcy Code.

**F.**    **Objection to Exemptions Sought Pursuant to Section 522(d)(11)**

Section 522(d)(11)(D) permits a debtor to exempt "a payment not to exceed $23,675, on account of personal bodily injury, not including pain and suffering, or compensation for actual pecuniary loss . . . 11 U.S.C. § 522(d)(11)(D). Davidson seeks to exempt 100% of the proceeds received from a lawsuit titled *Davidson v. Epstein*, Docket No. 150240/2019, pending in the Supreme Court of the State of New York (the "Epstein Lawsuit"). In his continuing effort to mislead the Court and creditors and secrete valuable assets, Davidson simply labels the Epstein Lawsuit in his Schedules as a "Personal injury action," in an "Unknown" amount. *See* Schedule A/B: Property, Line 33.

According to Davidson's Complaint filed in the Epstein Lawsuit, a copy of which is annexed hereto as Exhibit C, Jared Epstein ("Epstein") negligently caused a golf ball to strike Davidson while the two were hitting golf balls in Epstein's backyard. Davidson seeks damages against Epstein "to be determined at trial" because he "has suffered great pain and agony" and has "suffered both past economic loss and out of pocket expenses and will continue to suffer economic loss and out of pocket expenses in the future," recovery for which are outside the scope of the exemption.

Accordingly, Jefferies objects to Davidson's exemption of the Epstein Lawsuit to the extent (a) any payment, by judgment, settlement, or otherwise is for "pain and suffering, or compensation for actual pecuniary loss" and (b) the value of any proceeds received exceeds the $23,675 statutory cap.

14

**G.**  **Objection to Exemptions Sought Pursuant to Section 522(d)(12)**

Section 522(d)(12) permits a debtor to exempt "[r]etirement funds to the extent those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."

Davidson seeks to exempt the following assets under Section 522(d)(12):

| Assets | Alleged Value | Claimed Exemption |
|---|---|---|
| SEP: National Securities Corporation | $69,000.00 | $69,000.00 |
| IRA: National Securities Corporation | $100,000.00 | $100,000.00 |

Jefferies objects to the exemption to the extent:

(a)    Such funds are not "exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986;"

(b)    Davidson has failed to schedule the true value of such accounts or has additional accounts in excess of the amounts set forth in Schedule C.

**H.**  **Jefferies Reserves the Right to Raise Additional Objections**

Davidson and his girlfriend have purposely refused to comply with the B.R. 2004 Order, believing that they can hide assets and material information from this Court and creditors of the Debtor's estate.  Accordingly, Jefferies expressly reserves all rights relating to, among other things and without limitation, further objections to Davidson's claimed exemptions and asserted values of his assets.  Jefferies further reserves its right to amend, modify or supplement this Objection, including responding to the filing of any additional documents or exhibits and to raise additional arguments at or prior to the hearing on this Objection.

## **CONCLUSION**

**WHEREFORE**, for the reasons stated herein, Jefferies respectfully requests that this Court

enter an Order, (i) denying Davidson's exemption claims, and (ii) granting such other and further

relief as this Court deems just and proper.

Dated:    October 21, 2019
          Florham Park, New Jersey

**GREENBERG TRAURIG, LLP**

By: */s/ Alan J. Brody* _____
Alan J. Brody, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3543
Email:  *brodya@gtlaw.com*

*Counsel for Jefferies LLC and Jefferies
Group LLC*

45461548v4