**GREENBERG TRAURIG, LLP**
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 443-3543 (Telephone)
(973) 295-1333 (Facsimile)

*Counsel to Jefferies LLC and Jefferies Group LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RICK ALAN DAVIDSON,<br><br>Debtor. | Chapter 11<br><br>Case No. 19–11486 (SMB) |
| JEFFERIES, LLC and<br>JEFFERIES GROUP, LLC,<br>        Plaintiffs,<br>v.<br><br>RICK ALAN DAVIDSON,<br><br>        Defendant. | Adversary Proceeding No. |

**COMPLAINT (I) TO DECLARE CERTAIN DEBTS**
**NON-DISCHARGEABLE UNDER 11 U.S.C. § 523, AND**
**(II) OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 727**

Plaintiff, Jefferies LLC and Jefferies Group LLC (collectively, "**Jefferies**"), files this complaint (the "**Complaint**") to determine the dischargeability of debts owed by defendant Rick Alan Davidson (the "**Defendant**" or "**Debtor**") and objecting to Defendant's discharge. In support of this Complaint, Jefferies states:

## INTRODUCTION

1. This proceeding arises out of a series of false representations made to Jefferies by Defendant for the purpose of fraudulently inducing Jefferies to extend credit to Defendant. Defendant's deceitful conduct in fraudulently inducing Jefferies to hire him and advance him millions of dollars, and Defendant's misappropriation of the significant funds advanced, warrants excepting from discharge the debt owing from Defendant to Jefferies.

2. Defendant has also made material misrepresentations in papers filed with the Court under penalty of perjury in the above-captioned bankruptcy case and has transferred or concealed property with actual intent to hinder, delay and defraud Jefferies and his other creditors. Furthermore, Defendant has concealed essential information and records relating to his financial condition and has failed to satisfactorily explain the dissipation of significant assets that could have been used to pay the sizeable debt owing to Jefferies. For these reasons, among others, Defendant is not entitled to a discharge.

## JURISDICTION

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 & 157(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

5. This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) & (J).

6. Pursuant to Fed. R. Bankr. P. 7001(4) & (6), this proceeding is an adversary proceeding governed by the rules contained in Part VII of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## PARTIES

7. Jefferies LLC is a Delaware limited liability company with its principal place of business in New York. Jefferies LLC is and at all times relevant to this matter was a broker dealer, registered as such with the U.S. Securities and Exchange Commission. Jefferies LLC is a member of the Financial Industry Regulatory Authority, Inc. ("**FINRA**").

8. Jefferies Group LLC is a Delaware limited liability company with its principal place of business in New York. Jefferies Group LLC is the sole member of Jefferies LLC and the holder of the Promissory Note executed by Defendant.

9. Defendant is a securities broker and investment adviser registered with and regulated by the SEC and FINRA, with over 30 years of experience in the broker-dealer industry. Defendant is also an individual Chapter 11 debtor and debtor-in-possession in the above-captioned bankruptcy case (the "**Bankruptcy Case**").

10. Defendant claims to reside in Miami Beach, Florida.

## GENERAL ALLEGATIONS

### I. Jefferies Hires Defendant as an At-Will Employee and Defendant Agrees to Comply with the Firm's Policies.

11. On May 17, 2016, Defendant accepted employment with Jefferies as an at-will Managing Director in the Wealth Management Division in New York City. Defendant came to Jefferies from Morgan Stanley.

12. In connection with his hiring, Defendant signed a series of agreements. Among these documents was an offer letter, which set forth the pertinent terms of Defendant's prospective employment and compensation by Jefferies and the conditions upon which he would be hired by Jefferies (the "**Offer Letter**").

13.  During Defendant's recruitment to Jefferies, he was asked about ongoing and prior compliance issues or investigations at Morgan Stanley. The Offer Letter required that Defendant specifically warrant that "Except as disclosed below, to the best of my current knowledge and belief, I am not, and have not been, the subject of any investigation, whether by any prior employer, any governmental or regulatory authority, or any self-regulatory organization," and it provided a space for Defendant to insert details about prior and ongoing investigations of which Defendant was the subject. Defendant did not disclose to Jefferies that he was the subject of any current or prior investigations.

14.  Beyond the employment agreement, Jefferies' management spoke to Defendant about his compliance history in advance of his hiring by Jefferies. Defendant provided explanations for three customer complaints between 2011 and 2012 that were disclosed on his publicly available CRD record, which Jefferies inquired about.[1] He also represented that he had not had any further compliance related issues since 2012.

15.  The Offer Letter made explicitly clear that Defendant's employment with Jefferies was "at will," and Jefferies could terminate Defendant's employment at any time, with or without cause or notice.

## II.  **The Promissory Note.**

16.  In addition to signing the Offer Letter, on or about May 17, 2016, Defendant signed a full-recourse Promissory Note with Jefferies (the "**Note**"), which set forth the terms of a $5,142,500 loan he would receive from Jefferies (the "**Loan**").

17.  The Note provided for acceleration of repayment of the Loan in certain instances, including the termination of Defendant's employment for cause. Upon the occurrence of an

---

[1] "CRD" stands for Central Registration Depository, which is a database maintained by FINRA that holds information about registered securities brokers and brokerage firms. Each registered person or firm has a CRD number and his/her/its own CRD record.

4

acceleration event, the Note provides that interest would begin to accrue at the rate of 8% per annum.

### III. Defendant Obtained the Loan from Jefferies under False Pretenses and Based on False Representations.

18. In connection with Jefferies' hiring of Defendant, Defendant failed to disclose that he was the subject of internal investigations for perceived misconduct at his prior firm, Morgan Stanley.

19. Approximately one month after Defendant joined Jefferies, and after Jefferies had already extended the Loan to Defendant, Morgan Stanley filed a Form U5 with FINRA reporting that Defendant had resigned from Morgan Stanley in the midst of an internal review that had begun on January 6, 2016 and ended on May 17, 2016 – the day that Davidson resigned from Morgan Stanley and started his employment at Jefferies. The internal Morgan Stanley review related to Defendant's exercise of discretion in clients' accounts, as well as Defendant's receipt of a loan from another Morgan Stanley employee.

20. When confronted by Jefferies' management about Morgan Stanley's Form U5 disclosure, Defendant represented to Jefferies that he was not aware of the Morgan Stanley internal review.

21. This statement, as well as Defendant's representations about his compliance history during the recruitment process, was false.

22. In 2011, Defendant was the subject of an internal investigation by Morgan Stanley for exercising discretion and unauthorized trading.[2] Following the investigation, in June 2011, Morgan Stanley issued a disciplinary Letter of Reprimand to Defendant.

---

[2] FINRA Rule 2510(b), applicable to registered persons and broker-dealers, provides: "No member or registered representative shall exercise any discretionary power in a customer's account unless such customer has given prior written authorization to a stated individual or individuals and the account has been accepted by the member, as

5

23. In 2012, Morgan Stanley investigated Defendant for unauthorized trading again, and in February 2012, Defendant received another Letter of Reprimand from Morgan Stanley.

24. Following Morgan Stanley's 2012 internal investigation, Morgan Stanley also required Defendant to sign a document titled "Last Chance Agreement," which stated that Defendant was obligated to comply with Morgan Stanley's policies on use of discretion and unauthorized trading, as well as Morgan Stanley's substance abuse policies. The Agreement gave Defendant a "last chance" at Morgan Stanley and provided that if it ever found that he violated the policies cited in the Agreement or any other policy, he would be terminated.

25. Following its own investigation, in 2013, FINRA – Defendant's primary regulator – issued a Cautionary Action Letter (a form of written discipline that is not reportable on the CRD) to Defendant for using discretion without written authorization in customer accounts in 2011 and 2012.

26. In 2016, Defendant was under review yet again for exercising discretion and unauthorized trading – subjecting him to the potential ramifications of the "Last Chance Agreement."

27. Defendant was unquestionably aware of Morgan Stanley's 2016 internal investigation. On March 15, 2016, the Senior Complex Risk Officer for the Midtown Manhattan Complex at Morgan Stanley Wealth Management emailed Defendant, saying "Pursuant to *SIU's ongoing investigation*, please provide your personal cell phone records from January 1, 2015 to March 15, 2016. Please provide these records no later than Tuesday, March 22, 2016." Defendant acknowledged the request and asked for clarification on what documents were being sought.

---

evidenced in writing by the member or the partner, officer or manager, duly designated by the member, in accordance with Rule 3010." To execute a trade using discretion without the appropriate approvals is also commonly referred to as unauthorized trading.

6

28. Defendant knew about internal investigations in 2011; failed to disclose the severity of his compliance misconduct in 2011 and 2012 or the employer- and regulator-imposed discipline he received for such conduct; and lied about the internal investigation that was ongoing at Morgan Stanley when he joined Jefferies in 2016.[3] These facts were material because (i) as an employer, Jefferies had an obvious expectation of being able to rely on the truthfulness and integrity of its employees, and (ii) the disciplinary history and reportable disclosure events of a registered person such as Davidson can impact (a) the individual's ability to become re-registered with FINRA, the SEC and/or state securities regulators, and (b) the terms by which regulators will agree to register such individuals (for example, by imposing the requirement of a heightened supervision plan).

29. Jefferies was deprived the opportunity to consider the potential regulatory implications of Davidson's prior discipline and the internal investigation that would be disclosed by his prior employer.

30. The Offer Letter required disclosure of any internal investigation as a condition to Defendant's obtaining employment with Jefferies and the benefits thereof. One such benefit was the Loan.

31. Defendant made material misrepresentations to Jefferies prior to and during his employment, which Jefferies relied upon in loaning him money, hiring him and continuing his employment.

---

[3] The scope and severity of these misrepresentations were not discovered by Jefferies until it received discovery in connection with the FINRA Arbitration (as defined below).

### IV.   Jefferies Terminates Defendant and Commences FINRA Arbitration.

32.   Jefferies terminated Defendant's employment for cause as of June 16, 2017, which triggered a repayment obligation under the Note and caused interest to accrue on the outstanding balance at 8% per annum.

33.   On October 26, 2017, Jefferies initiated an arbitration against Defendant by filing a Statement of Claim with FINRA Dispute Resolution (the "**FINRA Arbitration**"). Jefferies asserted claims against Defendant for, among other things, breach of promissory note and unjust enrichment/*quantum meruit* to collect on the outstanding loan amounts due under the Note.

### V.   Defendant Files Bankruptcy.

34.   On May 7, 2019 (the "**Petition Date**") – 18 months into the FINRA Arbitration, having completed five full days of evidentiary hearing and only six days before the FINRA Panel was scheduled to resume the final hearing – Defendant commenced the Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "**Bankruptcy Code**").

35.   As of the Petition Date there was an outstanding principal balance of approximately $5,142,500.00, plus accrued interest of $857,900.54, attorneys' fees and costs of $626,083.30 and estimated arbitration forum fees of $20,587.50, for a total of $6,647,071.34 due from Defendant to Jefferies under the Note (the "**Indebtedness**").

36.   The Indebtedness remains outstanding and unpaid.

### VI.   Defendant's Bankruptcy Filings Contain Material Omissions and Errors.

37.   On the Petition Date, Defendant filed his Voluntary Petition for relief under chapter 11 (the "**Petition**"), Schedules (the "**Schedules**") and Statement of Financial Affairs

("**SOFA**") [Main Case, Dkt. No. 1]. On October 11, Defendant filed amended Schedules [Main Case, Dkt. No. 60] and an amended SOFA [Main Case, Dkt. No. 61].

38. Each of the Petition, Schedules and SOFA are executed by Defendant under penalty of perjury.

### a. Schedules

39. On his Schedules, Defendant identifies real property in Sag Harbor, New York (the "**Sag Harbor Property**") in which he claims to own a one-half interest.

40. The other one-half interest in the Sag Harbor Property is alleged to be owned by Defendant's girlfriend, Nancy Stearns ("**Ms. Stearns**").

41. The Schedules reflect a current value of the Sag Harbor Property of $2,900,000 and that it is encumbered by first and second mortgages totaling approximately $2,269,000 (the "**Mortgages**").

42. A recent appraisal of the Sag Harbor Property reflects a value of $3,032,835.00.

43. Defendant lists no equity available for creditors in the Sag Harbor Property, despite the value of the Sag Harbor Property significantly exceeding the total secured debt represented by the Mortgages.

44. Defendant is required to disclose on his Schedules all of his assets, including any interests in business or companies.

45. The Schedules fail to disclose additional material assets of Defendant, including interests in businesses and bank accounts, and the value of Defendant's interest in Bellator, LLC.

46. The Schedules do not reflect Defendant's interests in DLJ First Esc LP, DLJ Funds Investment Partners II and Pershing LLC.

47. The Schedules undervalue material assets, including "[f]urniture, appliances and household items" – valued at $5,000 – and "[t]vs, computer" – valued at $500 (collectively, the "**Household Property**"). *See* Schedules, Schedule A/B at §§ 6-7.

48. Defendant seeks to exempt all of the Household Property. *See* Schedules, Schedule C at § 2.

49. The Sag Harbor Property – at least half owned by Defendant – is a newly renovated, fully furnished home valued at over $3 million.

50. As of the Petition Date, Defendant claimed to be residing in a 2,000-square foot condominium in the Continuum, a luxury oceanfront building on Miami Beach, Florida, for which he was paying $8,000 per month in rent.

51. Defendant has not provided any appraisal or other documentation to support the artificially low value ascribed to the Household Property.

52. Defendant has not provided any appraisal or other documentation to support the values ascribed to property listed as exempt on his Schedules, including a Cartier watch, a personal injury action against a high-net worth individual and "Various art work." *See* Schedules, Schedule C at § 2.

53. Upon information and belief, Defendant owns cryptocurrency that he has failed to disclose as an asset on his Schedules.

### b. *Statement of Financial Affairs*

54. Defendant made many payments and transfers within one year of the Petition Date that benefited Ms. Stearns, an insider of the Debtor, but that are not listed on the SOFA.

10

55. Without limitation, Defendant made payments to, or for the benefit of, Ms. Stearns in connection with mortgage obligations, rent obligations, car lease or financing obligations, medical insurance, life insurance and other items.

56. Defendant discloses a gift made to Ms. Stearns on March 23, 2019 and valued at $15,000. *See* SOFA, at § 13.

57. Defendant fails to list various other gifts (valued at over $600) that he gave to Ms. Stearns and others within two years of the Petition Date, including significant cash transfers made to, or for the benefit of, Ms. Stearns.

58. Those cash transfers made to, or for the benefit of, Ms. Stearns include payments for rent, cars, medical insurance, life insurance and other gratuitous cash transfers.

59. The Debtor fails to list all bank accounts in which he had an interest and/or that were closed within one year of the Petition Date. *See* SOFA, at § 20.

## VII. Concealment of Assets and Failure to Explain Dissipation of Assets.

60. In 2016, Defendant transferred over $3.5 million out of his personal bank account to destinations unknown. Defendant has failed to provide any explanation as to the whereabouts of these funds.

61. In addition to the Loan from Jefferies, Defendant has earned gross income of over $2.2 million per year for at least the two years prior to the Petition Date.

62. Defendant's Monthly Operating Reports (the "**MORs**") show cash receipts of $977,981.36 for the five-month reporting period from the Petition Date through September 30, 2019. *See* MORs [Main Case, Dkt Nos. 24, 39, 48, 57 and 63].

63. Davidson's amended Schedules list $8,109.00 in checking accounts at People's United Bank and JPMorgan Chase Bank, N.A. as of the Petition Date. *See* Schedule A/B: Property Question 17 and SOFA Question 20.

64. Defendant claims in his amended Schedules, as of the Petition Date, to have only $100 in cash and, other than future earnings, almost no other assets available for distribution to creditors.

65. As reflected in the amended Schedules, Defendant has reduced the value of his Cartier watch claimed in his original Schedules from $8,000 to $4,000 and his cash from $9,000 to only $100. Defendant amended his Schedule to manipulate the amount of his exemptions under 11 U.S.C. § 522(d)(5).

66. Defendant has refused to explain how his considerable income, including the proceeds of the Loan from Jefferies, has been dissipated and how he has so few assets available to satisfy his obligations to Jefferies.

67. Defendant has concealed the existence of bank accounts at PNC Bank and other financial institutions. Upon information and belief, the Debtor maintains materials assets in bank accounts that he has not disclosed on his Schedules.

68. While the Schedules disclose the existence of Defendant's interest in Bellator LLC, Defendant has refused to disclose details relating to Bellator LLC, including the value of his interest in that entity.

69. Defendant has also failed to disclose the significant cash transfers made in connection with Bellator LLC and the identities of recipients of cash transfers from that entity.

70. Upon information and belief, Defendant has engaged in gambling activities, including purchasing "markers" in casinos in the Bahamas, but has failed to disclose the amounts

and whereabouts of such "markers" or any casino chips or deposits, all of which constitute property of his estate.

**VIII.    Defendant and Ms. Stearns have Engaged in Dilatory and
<u>Evasive Discovery Practices.</u>**

71.   To date, both Defendant and Ms. Stearns have failed to comply with court orders and validly issued subpoenas in refusing to produce various categories of documents requested by Jefferies as part of its routine discovery under Bankruptcy Rule 2004.

72.   These failures to comply with basic discovery obligations have persisted despite multiple follow up requests from counsel for Jefferies to counsel for each of Defendant and Ms. Stearns about the status of the required productions.

73.   Jefferies continues to await production from both Defendant and Ms. Stearns of, among other documents, those documents relating to Defendant's Schedules and SOFA, including claimed exemptions, assets and transfers made to insiders or third parties.

74.   As a result of the refusal of Defendant and Ms. Stearns to comply with their respective discovery obligations, neither Jefferies nor the Court can identify material details pertaining to Defendant's financial condition, including the location and identity of material assets of the estate.

75.   Defendant has failed to explain or produce records supporting material transfers made within four years of the Petition Date between Defendant and various persons.

**IX.    <u>Attempted Conversion to Chapter 7.</u>**

76.   On November 5, 2019, Defendant sought by application to convert his chapter 11 case to a case under chapter 7 of the Bankruptcy Code [Main Case, Dkt. No. 65] (the "**Conversion Application**"). By order entered on November 6, 2019 [Main Case, Dkt. No. 66],

13

the Court denied the Conversion Application as a result of Defendant's failure to file a motion to convert in accordance with Bankruptcy Rule 1017(f)(2).

77.  On November 8, 2019, Defendant filed a *Motion for the Entry of an Order Converting Debtor's Case to a Chapter 7 Case* [Main Case, Dkt. No. 66] (the "**Conversion Motion**"). The Conversion Motion is set for hearing on December 5, 2019.

## CLAIMS FOR RELIEF

### COUNT I

### (Non-dischargeability under 11 U.S.C. § 523(a)(2)(A))

78.  Jefferies repeats and realleges paragraphs 1 through 36 of this Complaint as though fully set forth herein.

79.  Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting a debtor's or an insider's financial condition.

80.  Defendant obtained the Loan from Jefferies by false pretenses, a false representation, and actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

81.  At the time Jefferies was considering Defendant for employment and in connection with the Loan to be made to Defendant, Defendant falsely represented to Jefferies that he was not, nor had he been, under review or investigation by his prior employer or any regulator.

82.  Defendant secured the Loan from Jefferies based on false pretenses and through false representations made to Jefferies.

83. The Indebtedness owed by Defendant to Jefferies is excepted from any discharge granted or to be granted to Defendant.

WHEREFORE, Jefferies prays that the Court:

A. Determine that the Indebtedness owed by Defendant to Jefferies is excepted from any discharge granted to Defendant;

B. Grant Jefferies a reasonable attorney fee in bringing this adversary proceeding; and

C. Grant Jefferies such other and further relief as is just and proper.

## COUNT II

### (11 U.S.C. §727(a)(2) – Transfer or Concealment with Actual Intent to Hinder, Delay or Defraud a Creditor)

84. Jefferies repeats and realleges paragraphs 1 through 17 and 34 through 77 of this Complaint as though fully set forth herein.

85. Pursuant to 11 U.S.C. § 727, a debtor is not entitled to a discharge where such debtor, with intent to hinder, delay, or defraud a creditor has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

86. With intent to hinder, delay or defraud Jefferies, and within one year of the Petition Date, Defendant transferred or concealed, or permitted to be transferred or concealed, certain of his property.

87. Defendant's intentional concealment or transfer of material assets includes his concealment of significant equity in the Sag Harbor Property, bank accounts and transfers made for little or no value to or for the benefit of third parties, including Ms. Stearns.

88. Defendant is not entitled to a discharge.

WHEREFORE, Jefferies prays that the Court:

    A.    Determine that the Defendant is not entitled to a discharge;

    B.    Grant Jefferies a reasonable attorney fee in bringing this adversary proceeding; and

    C.    Grant Jefferies such other and further relief as is just and proper.

## COUNT III

**(11 U.S.C. §727(a)(3) – Concealment or Destruction of Books and Records)**

89.    Jefferies repeats and realleges paragraphs 1 through 17 and 34 through 77 of this Complaint as though fully set forth herein.

90.    Pursuant to 11 U.S.C. § 727, a debtor is not entitled to a discharge where such debtor fails to keep or preserve records from which the debtor's financial condition or business transactions might be ascertained.

91.    Defendant borrowed over $5 million from Jefferies in 2016.

92.    Defendant generated gross income of no less than $2.2 million per year in each of 2017 and 2018.

93.    Defendant falsely claims, as of the Petition Date, to have only $1 in cash.

94.    Defendant has refused and continues to refuse to produce documents relevant to his financial condition or from which business transactions and transfers might be ascertained.

95.    Defendant has destroyed, concealed or failed to keep or preserve records from which Defendant's financial condition or business transactions might be ascertained.

96.    Defendant is not entitled to a discharge.

WHEREFORE, Jefferies prays that the Court:

    A.    Determine that the Defendant is not entitled to a discharge;

      B.      Grant Jefferies a reasonable attorney fee in bringing this adversary proceeding; and

      C.      Grant Jefferies such other and further relief as is just and proper.

## COUNT IV

### (11 U.S.C. § 727(a)(4)(A) - False Statements)

97.      Jefferies repeats and realleges paragraphs 1 through 17 and 34 through 77 of this Complaint as though fully set forth herein.

98.      Pursuant to 11 U.S.C. § 727, a debtor is not entitled to a discharge where such debtor knowingly and fraudulently, in or in connection with the case makes a false oath or account.

99.      In connection with each of his Petition, Schedules and SOFA, Defendant declared under penalty of perjury that the information contained therein was true and correct.

100.      The information contained in the Schedules and SOFA contained material false statements and omissions that constitute a false oath or account in connection with the Bankruptcy Case.

101.      Defendant's non-disclosure, omissions and failure to accurately report assets and transfers have intentionally misled creditors and the Court as to the debtor's true financial condition or, at a minimum, with reckless disregard for the truth with regard to a matter material to the Bankruptcy Case.

102.      Defendant is not entitled to a discharge.

WHEREFORE, Jefferies prays that the Court:

      A.      Determine that the Defendant is not entitled to a discharge;

      B.    Grant Jefferies a reasonable attorney fee in bringing this adversary proceeding; and

      C.    Grant Jefferies such other and further relief as is just and proper.

## COUNT V

### (11 U.S.C. § 727(a)(5) – Failure to Explain Losses)

103. Jefferies repeats and realleges paragraphs 1 through 17 and 34 through 77 of this Complaint as though fully set forth herein.

104. Pursuant to 11 U.S.C. § 727, a debtor is not entitled to a discharge where such debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.

105. Defendant borrowed over $5 million from Jefferies in 2016.

106. Defendant generated gross income of no less than $2.2 million per year in each of 2017 and 2018.

107. Defendant falsely claims, as of the Petition Date, to have only $1 in cash.

108. Defendant transferred over $3.5 million out of his personal bank account to destinations unknown.

109. Defendant has refused to produce documents supporting the significant loss of material assets.

110. Defendant has failed to explain satisfactorily the loss or deficiency of significant assets over the past several years.

111. Defendant is not entitled to a discharge.

WHEREFORE, Jefferies prays that the Court:

      A.    Determine that the Defendant is not entitled to a discharge;

        B.    Grant Jefferies a reasonable attorney fee in bringing this adversary proceeding; and

        C.    Grant Jefferies such other and further relief as is just and proper.

Dated: November 11, 2019
Florham Park, New Jersey

**GREENBERG TRAURIG, LLP**

By: */s/ Alan J. Brody*
Alan J. Brody, Esq.
500 Campus Drive
Florham Park, New Jersey 07932
Telephone: (973) 443-3543
Email: *brodya@gtlaw.com*

*Counsel for Jefferies LLC and Jefferies Group LLC*

ACTIVE 45675955v5